## THE LAKE FABYAN.

### MERCHANTS' & MINERS' TRANSP. CO. et al. v. BRANCH.

(Circuit Court of Appeals, Fourth Circuit. September 11, 1922.)

No. 1983.

1. Shipping ⊙⟱132(5)—Evidence held to prove delivery of potatoes to ship in sound condition.

In shipper's action for damage to potatoes during transportation in defendants' steamship, evidence *held* to prove that the potatoes, when delivered to the ship, were in sound condition, and not frozen, as claimed by defendants.

2. Shipping ⊙⟱132(5)—Evidence held to prove negligence of carriers in storage of potatoes without adequate ventilation.

In shipper's action for damage to potatoes during transportation in defendants' steamship, evidence *held* to prove that defendants were negligent in storing the potatoes so as to subject them to heat from the engines, and in not providing for adequate ventilation.

3. Evidence ⊙⟱13—It is a matter of common knowledge hat ventilation is necessary to prevent decay of potatoes.

In shipper's action for damage to potatoes during transportation in defendant's ship, in which it is claimed that defendants were neglignet in not providing adequate ventilation, *held*, that it is within the common knowledge that ventilation is necessary to prevent decay.

4. Shipping ⊙⟱3½, New, vol. 8A Key-No. Series—Carrier, having contracted with shipper as a common carrier in its own name, could not avoid liability for negligence on ground that United States owned ship.

A carrier, having contracted with a shipper as a common carrier in its own name, and not as agent of the Shipping Board, by issuing its bill of lading could not avoid liability for damage to goods caused by its negligence during transportation, on the ground that the vessel was owned by the United States.

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk; D. Lawrence Groner, Judge.

Libel by C. C. Branch against the Merchants' & Miners' Transportation Company and the United States, as owner of the steamship Lake Fabyan. Decree for libelant, and respondents appeal. Affirmed.

Leon T. Seawell, of Norfolk, Va., and T. H. Swank, of Baltimore, Md. (Hughes, Little & Seawell, of Norfolk, Va., on the brief), for appellants.

Edward R. Baird, Jr., of Norfolk, Va. (Baird, White & Lanning, of Norfolk, Va., J. Gordon Bohannan, of Petersburg, Va., and George M. Lanning, of Norfolk, Va., on the brief), for appellee.

Before KNAPP and WOODS, Circuit Judges, and SMITH, District Judge.

WOODS, Circuit Judge. The steamship Lake Fabyan, from November 29 to December 1, 1920, received at Newport News from C. C. Branch 7,198 barrels of potatoes for transportation to Havana. The vessel was the property of the United States, operated by the Merchants' & Miners' Transportation Company under a contract of agency

⊙⟱For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

made with the Shipping Board. The contract of carriage was between Branch and the Merchants' & Miners' Transportation Company, as is evidenced by the bill of lading issued by that corporation.

On arrival at Havana on December 8, decay of the potatoes was indicated by stench and running of water from the barrels. Owing to congestion of vessels in the harbor, the Lake Fabyan could not find room to dock until December 15. When unloaded, all but a small portion of the potatoes had become pulp and water. The sound potatoes were not of value sufficient to pay the expense of storage and marketing. The bill of lading in effect exempted the carrier from liability for decay not due to its negligence. In his libel against the Merchants' & Miners' Transportation Company and the United States, Branch alleged the loss was caused by negligence in the manner of handling, loading, and storing, in the place of storing, in failing to provide proper and sufficient ventilation, and delay in discharge and delivery. The respondents denied negligence, and set up the affirmative defense that the loss was due to freezing of the potatoes before delivery to the ship. After taking much testimony on the issues thus presented, the District Court held that the potatoes were in sound and proper condition when shipped, and that failure of the carrier to provide the ventilation which it should have known to be necessary for safe transportation of potatoes from a temperate to a tropical climate caused the loss.

[1, 2] We think the shipper proved by the preponderance of the evidence that the potatoes were delivered in sound condition and that the loss of them was due to the negligence of the carrier. True, there was evidence on the part of the respondents of freezing temperature at and near Williamsburg, where the potatoes were produced, and at Newport News, where they were loaded. But there was much strong evidence to the effect that the temperature was not low enough to affect potatoes in barrels. As many of the farmers who produced the potatoes and sold them to Branch as were available as witnesses testified that the cold had not been sufficient to affect them, and that they delivered them to Branch in sound condition. Not only Branch and his agents, but the inspectors representing the carrier, who examined the potatoes in the usual way to ascertain if they were sound and in good shipping condition, testified they were sound and gave no indication of being affected by the cold. Indeed, all the witnesses who saw the potatoes agreed that they appeared to be in sound condition when shipped.

[3] On behalf of the carrier there was testimony that the ventilation was sufficient, and some witnesses testified that perishable fruits and vegetables could be and had been carried safely on a voyage of like course and duration without ventilation. But the great weight of evidence from both sides was that ventilation is necessary to prevent decay. It is within common knowledge that it could hardly be otherwise. The construction of the ship and the method of stowing the potatoes need not be set out in detail. They were stowed from the hold upwards to the decks. Extra between-decks had been placed on the ship. The hatches of the lower decks were closed, and freight stowed over them, so as to shut off air from that source. In addition,

the potatoes were subjected to some heat from the engines. Throughout the voyage the hatches remained closed, and no effort was made to provide adequate ventilation. This reference to the testimony is sufficient to show that it furnishes strong support for our adoption of the conclusion of the District Court that the loss was due to the negligent failure to provide adequate ventilation.

We do not think there was any negligent failure to discharge the cargo promptly. The agent of the Merchants' & Miners' Transportation Company had contracted with an apparently responsible dock owner to take the vessel on arrival. This contract was broken, because the dock was held by another vessel. The bill of lading exempted the carrier from responsibility for loss from such a cause. This, however, does not affect the liability of the carrier. The evidence on its behalf was that, when the hatches were opened on the day of arrival in Havana harbor, the potatoes emitted a stench and were in very bad condition. This decaying condition being due to the negligence of the respondents in possession of the goods, the burden was on them to show what portion, if any, of the damage was due to the unavoidable delay in discharging the cargo. They cannot put the burden on Branch, who had no control of the potatoes, of proving what portion, if any, of them would have been saved, had the cargo been promptly discharged. Nor can they ask the court to make any conjecture on the subject. Moreover, it does not appear from the testimony that the potatoes would have decayed before they were unloaded, had they been properly ventilated.

[4] There is nothing in the point that the libelant must look to the United States alone, as owner of the vessel, for his damages. The Merchants' & Miners' Transportation Company contracted with the libelant as a common carrier in its own name by issuing its bill of lading, and cannot escape the consequences of the violation of its contract. There is no evidence that Branch agreed or understood that the Merchants' & Miners' Transportation Company was acting only as agent of the Shipping Board and issued the bill of lading as agent.

The decree against the Merchants' & Miners' Transportation Company and the United States, as owner, is affirmed, without prejudice to the right of the Merchants' & Miners' Transportation Company to litigate, in this proceeding or in a separate proceeding, as it may be advised, such claim as it may have against the United States.

Affirmed.